UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 03-233-GWU

ROSA L. SLAVEN,                                                    PLAINTIFF,

VS.                                  **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                        DEFENDANT.

### INTRODUCTION

The plaintiff, Rosa Slaven, appeals from the negative administrative decision on her applications for Child's Disability Insurance Benefits (CIB) and for Supplemental Social Security Income (SSI).  The case is before the Court on cross-motions for summary judgment.

### CHILD'S DISABILITY INSURANCE

An individual who becomes disabled as defined by 42 U.S.C. Section 423(d) before attaining the age of twenty-two, who is the dependent child of a person entitled to old age or disability insurance benefits or fully insured at the time of his/her death, and who is unmarried at the time of application, is entitled to CIB.  42 U.S.C. Section 402(d)(1).

CIB benefits employ the same disability standards as are used to determine disability in adults.  42 U.S.C. Section 423(d).

Slaven

## ADULT'S SUPPLEMENTAL SECURITY INCOME[1]

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 CFR 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 CFR 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 CFR 404.1520©), 404,1521, 416.920©), 461.921.

4.  Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).

5.  Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.  Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).

---

[1] The claim for SSI was filed in 1998 after attaining age 18.

Slaven

> 7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  <u>See</u> 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968,

Slaven

973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's

4

Slaven

instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Slaven

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 CFR 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . .

Slaven

manipulative restrictions . . . or heightened sensitivity to environmental contaminants

. . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan,

905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the

Commissioner may still use the rules as a framework for decision-making, 20 CFR

Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term

"framework" in the text of the decision is insufficient, if a fair reading of the record

reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d

279, 282 (6th Cir. 1985). Even then, substantial evidence to support the

Commissioner's decision may be produced through reliance on this expert testimony

only if the hypothetical question given to the expert accurately portrays the plaintiff's

physical and mental impairments. Varley v. Secretary of Health and Human

Services,

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Slaven, a 24 year-

old former sewing machine operator, tomato picker, and amusement ride

worker with a "limited" education, suffered from impairments related to mild

osteoarthritis in the left knee, a history of a dislocated patella in the left knee,

a bipolar disorder, a dysthymic disorder, post-traumatic stress disorder,

borderline personality disorder, polysubstance dependence and being status

post ligamentous tear and arthroscopic ligament repair in the left knee. (Tr.

15, 18). While the plaintiff was found to be unable to return to her past

Slaven

relevant work, the ALJ determined that she retained the residual functional capacity to perform a restricted range of light level work.  (Tr. 24).  Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled.  (Tr. 24-25).  The ALJ based this decision, in large part, upon the testimony of a vocational expert.  (Tr. 23).

The Court must first determine the time frame pertinent to this appeal. Slaven alleged a disability onset date of June 28, 1980 on her CIB application.  (Tr. 156).  The proper inquiry in an application for SSI is whether the plaintiff was disabled on or after her application date.  Casey v. Secretary of Health and Human Services, 987 F.2d 1230, 1233 (6th Cir. 1993).  In the present action, the plaintiff's SSI application had a protective filing date of September 1, 1998.  (Tr. 14).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert William Ellis included an exertional limitation to light level work along with such non-exertional restrictions as (1) an inability to walk for more than two hours or stand for more than four hours in an eight-hour day; (2) an inability to perform work requiring exposure to unprotected heights; (3) a "moderate" limitation concerning exposure to moving machinery or driving automobiles; (4) a limitation to work that involved only routine, simple and non-detailed tasks; (5)

Slaven

a limitation to work where public and co-worker contact was casual and infrequent and where supervision was direct and non-confrontational; and (6) a limitation to jobs where changes were infrequent and gradually introduced. (Tr. 599).  In response, Ellis identified a significant number of jobs which could still be performed.  (Tr. 599-600).  Therefore, assuming that the vocational factors considered by Ellis fairly depicted Slaven's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to the framing of the physical factors of the hypothetical question, the undersigned can find no error.  Dr. Lena Daghestani examined Slaven and noted a history of left knee pain with the patient being status post left knee pain as well as a history of left arm fracture.  (Tr. 248).  Dr. Daghestani reported that the physical examination revealed no sign of significant physical impairment and specifically reported no restriction with regard to stooping, bending, reaching, standing, moving about, lifting, carrying, handling objects or traveling.  (Tr. 248-249).  The physical factors of the hypothetical question were consistent with this opinion.  More severe physical restrictions than those found by the ALJ were not reported by such treating and examining sources as the staff at the Scott County Hospital (Tr. 188-195, 533-543), Dr. Bruce Coffey  (Tr. 196-236), the staff at Columbia Lake Cumberland Regional Hospital (Tr. 237-245), the staff at Winchester, Patton and Burgess (Tr. 496, 522-526, 546-548), Dr. Andrew Kovacs (Tr. 510-514. 527), the staff at McCreary Christian Care Center (Tr. 515-521, 603-610), and the staff at the Pulaski County Health Department (Tr. 613-621).

Slaven

These reports provide substantial evidence to support the administrative decision.

Dr. Raymond Santucci examined Slaven and indicated on a Functional Capacities Form that she would never be able to bend, squat, crawl or climb. (Tr. 679).  These restrictions were not presented in the hypothetical question. This opinion was offset by that of Dr. Daghestani who was also a one-time examiner.  Furthermore, Dr. Santucci's assessment was contradicted by statements the physician made in the text of his report--i.e., he noted that the claimant was only moderately limited in her ability to bend in the text while stating this was totally precluded on the assessment.   (Tr. 676, 679). Therefore, under these circumstances, Dr. Santucci's opinion was properly disregarded in favor of that of Dr. Daghestani.

The hypothetical question also fairly characterized Slaven's mental condition.  The mental factors of the hypothetical question were essentially consistent with the restrictions indicated by Psychologist Gary Maryman, an examining consultant.  (Tr. 504-505).  More severe mental limitations than those found by the ALJ were not reported by such treating and examining sources as the Whitley County School Multi-Disciplinary Team (Tr. 264-270), the staff at Lake Cumberland Regional Hospital (Tr. 322-336, 622-625), the staff at Adanta (Tr. 337-494), the staff at the Methodist Medical Center (Tr. 626-638) and the Lakeshore Mental Health Institute (Tr. 639-659).   These reports provide substantial evidence to support the administrative decision.

Psychologist Julie Joseph-Fox, another examiner, reported that Slaven's mental functioning would be "poor" in a number of areas of mental

Slaven

functioning on a Mental Medical Assessment of Ability to do Work-Related Activities Form.  (Tr. 671-672).  These were more severe mental limitations than those found by the ALJ.  This opinion was offset by that of the equally-placed Maryman.  Furthermore, the assessment limitations were contradicted by statements contained in the text of Joseph-Fox's report.  For example, the examiner specifically stated that the plaintiff would be able to relate to co-workers, and supervision in the text of her report while rating these areas as "poor" on the assessment.  (Tr. 669, 671).  Joseph-Fox also related her limitations to a lack of motivation and the claimant's perception of herself rather than a discrete mental impairment.  (Tr. 671-672).  Indeed, possible malingering was the examiner's Axis I diagnosis.  (Tr. 669).  Under these circumstances, the ALJ properly disregarded Joseph-Fox's limitations.

Slaven argues that the ALJ erred by failing to provide sufficient reasons why her testimony was not found credible.  However, the ALJ indicated a number of reasons for this finding.  The ALJ noted that the plaintiff was inconsistent in statements she made relating to her husband, at times reporting that he was a quadriplegic who was dependent on her for care while at other times stating that he and other relatives did all the housework.  (Tr. 21).  The ALJ cited Dr. Daghestani's statement that Slaven's complaints were out of proportion to the clinical findings.  (Tr. 21).  The ALJ also noted Joseph-Fox's suspicions of malingering.  (Tr. 21).  Therefore, the ALJ had strong grounds for making his credibility determination and the Court must reject the plaintiff's argument.

11

Slaven

The undersigned concludes that the administrative decision should be affirmed.   Therefore,  the  Court  must  grant  the  defendant's  summary judgment  motion  and  deny  that  of  the  plaintiff.   A  separate  judgment  and order will be entered simultaneously consistent with this opinion.

This the 18th  day of April, 2007.

Signed By:

**G. Wix Unthank**

**United States Senior Judge**

12